HULL, Circuit Judge:
This appeal presents the question of whether a sheriff in Georgia acts as a county policymaker for purposes of the county’s liability under 42 U.S.C. § 1983. After review, we conclude that the defendant Clayton County has no authority to direct or control the Sheriff in his law enforcement function, that the Sheriff is not a county policymaker for that function, and thus, that Clayton County has no § 1983 liability for the Sheriffs law enforcement policies and conduct regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard. We affirm the entry of judgment in favor of the defendant Clayton County.
I. BACKGROUND
Plaintiff Brian Grech (“Grech”) brought this § 1983 action solely against Clayton County, Georgia (“Clayton County”). Grech’s complaint asserts that he was falsely arrested on an expired bench warrant because of the Sheriffs policy of permitting invalid warrants to remain on certain computer databases and of inadequately training and supervising his employees. We discuss both Grech’s 1985 arrest, which resulted in a bench warrant, and his 1998 arrest on that warrant.

A. Grech’s 1985 Arrest

In 1985, Grech was arrested for DUI and speeding in Clayton County, Georgia. The following morning, he was released from jail on bond and was given a court date of June 13, 1985, for both charges. On that date, Grech failed to appear in the State Court of Clayton County. Grech mistakenly believed that he could handle the charges from his residence in Kentucky. On June 24, 1985, the State Court of Clayton County issued a bench warrant that revoked Grech’s bond and authorized law enforcement officers to arrest him. That bench warrant referenced the case numbers for the DUI and speeding charges and stated that Grech had failed to appear in State Court.
On June 24, 1985, the bench warrant was entered into the local computer database shared by the courts and the Sheriffs Office in Clayton County. On July 5,1985, employees of the Clayton County Sheriffs Office entered the bench warrant into a statewide computer database of criminal information, which is organized and regulated by the Georgia Crime Information Center (“GCIC”). The GCIC’s statewide database is called the “Criminal Justice Information System” (“CJIS”) and is accessible by law enforcement agencies throughout Georgia. As detailed later, the Sheriffs Office refers to its local database as the CJIS system and uses the same local terminal to access the GCIC’s statewide CJIS system. Both the statewide and the local CJIS databases contain warrant information on “wanted” individuals who may be arrested by law enforcement officers.
In addition to issuing the bench warrant, the State Court of Clayton County sent Grech a letter notifying him that he had *1328 missed his court date. Grech voluntarily returned to Georgia and entered a nolo contendere plea to the speeding ticket and a guilty plea to DUI on July 12,1985. The State Court judge sentenced Grech and reprimanded him for missing his previous court date.
Grech alleges that he was not informed that the State Court earlier had issued a bench warrant. Grech assumed that the charges against him were resolved after he pled to them, was convicted, and paid his fine. The State Court reported the pleas on the local CJIS system but never removed its bench warrant from that system. The Sheriffs Office never removed it from either the local or statewide CJIS systems. Instead, the bench warrant remained active for thirteen years on both systems until July 3,1998.

B. Grech’s 1998 Arrest

On July 3, 1998, a City of Fayetteville police officer stopped Grech because one of his car’s tail lights was not functioning. The City of Fayetteville is in Fayette County, Georgia, which neighbors Clayton County, Georgia. When the city police officer ran a routine check on Grech’s driver’s license, the GCIC’s CJIS records revealed an outstanding bench warrant dating back to 1985. Grech tried to explain to the city police officer that there was a mistake in the records because he had taken care of the 1985 charges. The city police officer requested advice from the Clayton County Sheriffs Office on how to proceed. After verifying its records, the Sheriffs Office responded that Grech’s 1985 bench warrant was still active. Thereafter, the city police officer arrested Grech.
Initially transported to the jail in Fay-ette County, Grech later was transferred to the jail in Clayton County and then released on bond. Grech spent nine hours in jail. On August 17,1998, a judge on the State Court of Clayton ■ County returned the posted bond to Grech. Clayton County emphasizes that, prior to Grech’s arrest, the State Court never withdrew its 1985 bench warrant for Grech, and thus, that the Sheriff s Office did not err in not removing that warrant from the GCIC’s CJIS systems.[1]

C. Procedural History

In 1999, Grech brought a § 1983 action naming Clayton County as the sole defendant. Grech’s complaint alleged that his constitutional rights were violated when he was arrested in 1998 pursuant to a 1985 bench warrant that the Sheriffs Office failed to remove from the CJIS systems.[2] According to Grech, defendant Clayton County’s “failure to ensure adequate training, policies, procedures, practices, and customs regarding the use of the GCIC Computer System constituted a pattern or practice of deliberate indifference and led directly and foreseeably to the arrest of the Plaintiff.” In addition, Grech claimed that Clayton County had a custom and policy of permitting errors in warrant information to occur and to remain on the CJIS systems and of failing to prevent invalid criminal warrants from being on those systems.
*1329 In 2000, Clayton County moved for summary judgment on all claims.[3] Clayton County asserted that it had no § 1983 liability for the acts of the Sheriff or his deputies because the Sheriff was an agent of the state, not a policymaker for the county.[4]
The district court granted summary judgment in favor of defendant Clayton County on all claims. The district court concluded that the Sheriff was not a § 1983 policymaker for Clayton County when performing his law enforcement duties. The district court emphasized that under Georgia law, Clayton County does not control or direct the Sheriff in the performance of his law enforcement duties. Nor does Clayton County have policymak-ing authority for the Sheriffs Office’s compliance with the GCIC’s regulations or the training and supervision of the Sheriffs employees in that regard. Grech timely appealed.
II. SECTION 1983 LIABILITY

A. County Authority and Policy Required

The Supreme Court has placed strict limitations on municipal liability under § 1983. A county’s liability under § 1983 may not be based on the doctrine of respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A county is “liable under section 1983 only for acts for which [the county] is actually responsible.” Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc). Indeed, a county is liable only when the county’s “official policy” causes a constitutional violation. Monell, 436 U.S. at 694, 98 S.Ct. 2018. Thus, Grech must “identify a municipal ‘policy’ or ‘custom’ that caused [his] injury.” Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir.1998) (quotation marks omitted) (alteration in original) (citing Bd. of County Comm’rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).[5]
A plaintiff, like Grech, has two methods by which to establish a county’s policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. Monell, 436 U.S. at 690-91, 694, 98 S.Ct. 2018; Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir.1999) *1330 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs, and Grech, must show that the county has a custom or practice of permitting it and that the county’s custom or practice is “the ‘moving force [behind] the constitutional violation.’”[6] City of Canton, 489 U.S. at 389, 109 S.Ct. 1197 (alteration in original) (citing Monell, 436 U.S. at 694, 98 S.Ct. 2018 and Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)).
Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir.1996) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).
In this case, the parties do not dispute that a Georgia sheriff acts as a policymaker; instead, their dispute is over whether the Sheriff here acts as a policymaker for the defendant Clayton County. We thus review several recent decisions which instruct us how to determine whether a sheriff acts as county policymaker for purposes of § 1983.

B. McMillian and Turquitt

In McMillian v. Monroe County, 520 U.S. 781, 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), the United States Supreme Court concluded that, when acting in a law enforcement capacity, Alabama sheriffs are § 1983 policymakers for the state, and not the county. Under McMillian, the determination of the policymaker issue under § 1983, although a federal question, is guided by state law. Id. at 786, 117 S.Ct. 1734. McMillian further teaches that state law cannot answer the § 1983 policymaker question by “simply labeling” an official as a county or state official. Id. Instead, courts must focus on control over the official.
For example, although the Alabama Constitution provided that the state executive department includes “a sheriff for each county” and, in effect, labeled the sheriff as a state executive officer, see id. at 787, 117 S.Ct. 1734, the Supreme Court in McMillian did not end its analysis there.[7] Instead, it examined Alabama Code provisions and noted that the county *1331 had no control over the sheriffs law enforcement duties, whereas the Governor and the Attorney General had such control under an Alabama statute. Id. at 789-91, 117 S.Ct. 1734. Even though Alabama law suggested that the county had some influence over the sheriff (such as the county’s payment of his salary and purchase of his equipment), and even though the sheriff was elected locally by county voters, the Supreme Court in McMillian indicated that such factors did not amount to control over the sheriffs operations. See id. at 791-92, 117 S.Ct. 1734.
In Turquitt v. Jefferson County, 137 F.3d 1285 (11th Cir.1998), this Court sitting en banc explained how to determine whether an official acts as a policymaker for a county or the state. In Turquitt, we concluded that “Alabama sheriffls] act[] exclusively for the state rather than for the county in operating a county jail.” Id. at 1288. Although noting that Alabama’s Constitution “sends a clear message that a sheriff is a state officer,” id. at 1289, we, too, focused on control in deciding the § 1983 policymaker issue. Rather than relying on the “state official” label, our analysis in Turquitt went beyond Alabama’s Constitution and examined the sheriffs performance of his duties in operating the county jail and the lack of control that the county government had over the sheriffs performance of such duties.
Central to the McMillian and Turquitt decisions is the principle that “local governments [such as counties] can never be liable under § 198S for the acts of those [officials] whom the local government has no authority to control.” Turquitt, 137 F.3d at 1292 (emphasis added). Indeed, in Turquitt, this Court en banc emphasized the importance of control by characterizing the inquiry in McMillian as asking “which government body, under state law, had direct control over how the sheriff fulfilled [the duty at issue].” Turquitt, 137 F.3d at 1292. Holding counties liable in the absence of control over sheriffs would ignore Monell’s conception of counties as corporations, would substitute a conception of counties as mere units of geography, and would impose even broader liability than the respondeat superior liability rejected in Monell. Turquitt, 137 F.3d at 1291.[8] Therefore, our examination of Georgia law must center on whether counties in Georgia have control over sheriffs. A sheriffs policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes.
Both McMillian and Turquitt further remind us that, in examining control, we must consider the particular area or function for which the government official was alleged to be the final policymaker. McMillian, 520 U.S. at 785, 117 S.Ct. 1734 (law enforcement duties); Turquitt, 137 F.3d at 1287 (operation of the jail). In other words, for § 1983 liability, a determination must be made as to “who the policymaker is and in which particular area that policymaker acted.” Turquitt, 137 F.3d at 1287-88.[9] Thus, the appropri *1332 ate § 1983 inquiry under federal law is whether defendant Clayton County, under Georgia law, has control over the Sheriff in his law enforcement function, particularly for the entry and validation of warrants on the CJIS systems and the training and supervision of his employees in that regard.
III. GEORGIA LAW
In this appeal, plaintiff Grech’s main argument is that sheriffs are county policymakers under § 1983 because Georgia’s Constitution characterizes sheriffs as “county officers.” Grech contends that Georgia’s statutory and decisional law supports this “county officer” classification. The insurmountable hurdles for Grech are that, under McMillian, we must focus on control, not labels, and that, under Georgia law, counties lack authority and control over sheriffs’ law enforcement functions.[10] This is because the sheriff occupies a separate constitutional office independent from the defendant Clayton County. To the extent control over the sheriff exists, only the State has such authority and control. The sheriff receives his law enforcement power directly from the State. The defendant Clayton County does not delegate any of its governmental powers to the sheriff as a subunit of the defendant Clayton County.
To show the independence of the sheriffs constitutional office from the defendant Clayton County and this State control and corresponding absence of county control, we review the relevant Georgia constitutional and statutory provisions as well as applicable case law.

A. Georgia’s Constitution

At the outset, it is important to note that the only defendant in this case is the defendant Clayton County. Thus, we examine the governmental structure of the sheriffs office vis-á-vis the defendant Clayton County in Georgia’s Constitution. Georgia’s Constitution designates the sheriff as a “county officer” but, in the same paragraph, grants the state legislature the exclusive authority to establish and control a sheriffs powers, duties, qualifications, and minimum salary. Ga. Const, art. IX, § 1, ¶ 3(a)-(b).[11] Interpreting this constitutional provision, the Georgia Supreme *1333 Court has explained that county sheriffs are subject to the control of the Georgia legislature and are not county employees. Bd. of Comm’rs of Randolph County v. Wilson, 260 Ga. 482, 482, 396 S.E.2d 903 (1990) (“The sheriff ... is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission.”); Chaffin v. Calhoun, 262 Ga. 202, 203, 415 S.E.2d 906 (1992); Warren v. Walton, 231 Ga. 495, 499, 202 S.E.2d 405 (1973).
In contrast to the control it gives the State, Georgia’s Constitution does not grant counties legislative power or authority over sheriffs and expressly prevents counties from controlling or affecting the sheriffs elective county office.[12] Ga. Const, art. IX, § 2, ¶ 1(c)(1). In this regard, the Georgia Supreme Court has concluded that this constitutional restriction on the legislative power granted to counties (that is, Home Rule) prevents counties from taking action affecting the sheriffs office. Warren, 231 Ga. at 499, 202 S.E.2d 405; see Stephenson v. Bd. of Comm’rs of Cobb County, 261 Ga. 399, 401-02, 405 S.E.2d 488 (1991).[13] Thus, Georgia’s Constitution has created the sheriffs office as a separate constitutionally protected entity independent from the defendant Clayton County.

B. Sheriffs Perform Law Enforcement Function for the State

The sheriffs’ independence from counties is further shown by how sheriffs act as agents for the state in enforcing the laws and in keeping the peace. Georgia’s Constitution provides that “[t]he Governor shall take care that the laws are faithfully executed and shall be the conservator of the peace throughout the state.” Ga. Const, art. Y, § 2, ¶2. In enforcing the laws and conserving the peace, the Governor does not act alone, but necessarily acts through state agents such as sheriffs.[14] In Georgia, the office of sheriff carries with it both the common law and statutory duties of sheriffs to enforce the laws and preserve the peace, as well as additional statutory duties imposed by the State. O.C.G.A. § 15-16-10(a)(l)-(8).[15] The *1334 Georgia legislature mandates that it is the express duty of the sheriff “to perform such duties as are or may be imposed by law or which necessarily appertain to his or her office.” O.C.G.A. § 15-16-10(a)(8).
In McMillian, the Supreme Court pointed out that historically a sheriff had geographic restrictions but in reality “represented the State in fulfilling his duty to keep the peace.”[16] McMillian, 520 U.S. at 794, 117 S.Ct. 1734. Indeed, “in conserving the public peace, in vindicating the law, and in preserving the rights of the government, [the sheriff] represents the sovereignty of the State and he has no superior in his county.” 1 W. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables 5 (1941), cited with approval in McMillian, 520 U.S. at 794, 117 S.Ct. 1734. Thus, it is entirely consistent for sheriffs to be labeled as “county officers” in Georgia’s Constitution to reflect their geographic territory, but for them still to act on behalf of the State in enforcing the laws and keeping the peace. See R. Cooley, Handbook on the Law of Municipal Corporations 512 (1914) (“Sheriffs ... clerks and other so-called county officers are properly state officers for the county. Their functions and duties pertain chiefly to the affairs of state in the county”).
In addition to their general law enforcement duties, the Georgia legislature prescribes and controls other law enforcement duties of sheriffs. For example, the State requires that sheriffs perform specific duties relating to state courts. The Georgia legislature mandates that it is the duty of sheriffs “[t]o execute and return the processes and orders of the courts and of officers of competent authority ... with due diligence.” O.C.G.A. § 15-16-10(a)(l) (Supp.2002). The State mandates that sheriffs, in their respective counties, have a duty to attend all sessions of the superior court of the county,[17] to publish sales, citations, and other proceedings as required by law, to keep an execution docket, and to keep other specified records. O.C.G.A. § 15-16-10(a)(2)-(6). This same statute provides that “[i]f any sheriff or deputy fails to comply with any provision of [O.C.G.A. § 15-16-10(a) ], he shall be fined for a contempt.” O.C.G.A. § 15 — 16— 10(a)(8), (b).
The State further empowers sheriffs to act beyond the boundaries of their counties of election in certain circumstances. Sheriffs may transfer prisoners to another county jail if the jails in their counties are in an “unsafe condition.”[18] O.C.G.A. § 42-4-4(a)(3). In addition, the State authorizes sheriffs to exercise their discre *1335 tion to “transfer[] a prisoner to another jail in another county if the sheriff concludes that such transfer is in the best interest of the prisoner or that such transfer is necessary for the orderly administration of the jail.” O.C.G.A. § 42-4-^4(b). Georgia law also empowers sheriffs to make arrests for traffic violations outside their counties. See O.C.G.A. § 40-13-30; City of Winterville v. Strickland, 127 Ga. App. 716, 718-19, 194 S.E.2d 623 (1972).
In sum, under Georgia law, the sheriffs function, both under his common law heritage and as supplemented by state statute, is to enforce the laws and keep the peace on behalf of the State in his geographical territory. Thus, Georgia’s Constitution has made the sheriff a constitutionally protected office independent from the defendant Clayton County and prevented the defendant Clayton County from taking any action to affect the sheriffs office.

C. State Controls Qualifications, Salary and Training

The Georgia legislature also has declared that “proper qualifications and standards be required of the ... sheriff so as to increase the effectiveness of the several sheriffs of this state as law enforcement officers to combat crime.” O.C.G.A. § 15-16 — 1(a). The State mandates a detailed set of qualifications that a person must satisfy to be a candidate for the sheriffs office in any county. See O.C.G.A. § 15-16-l(a)-(e). For example, the State requires that a sheriff be at least twenty-five years old, not have a felony record, be a resident of the county for at least two years prior to offering candidacy, and be a registered or certified peace officer or complete the requirements of being a certified peace officer within six months after taking office. O.C.G.A. § 15 — 16—1(c)(1)(B), (D), (F), (J). The State sets the sheriffs’ minimum salary and requires that it be paid from county funds based on the county’s population. O.C.G.A. § 15 — 16— 20(a)(1).
In addition, the State fixes the training requirements for sheriffs-elect and existing sheriffs in all counties. O.C.G.A. § 15-16-3. Notably, if a sheriff fails to comply with the annual training requirements, the Governor may suspend the sheriff without pay for ninety days. O.C.G.A. § 15 — 16— 3(e)(4). Newly-elected sheriffs must complete specialized training provided by the Georgia Sheriffs’ Association with the assistance of the Georgia Public Safety Training Center. O.C.G.A. § 15 — 16—3(b). Thereafter, sheriffs must complete at least twenty hours of training annually. O.C.G.A. § 15 — 16—3(e)(1). The Georgia Sheriffs’ Association uses state or federal funds to cover all training costs. O.C.G.A. § 15-16-3(d). The State further mandates that a sheriffs failure to complete training requirements will result in the loss of arrest powers. O.C.G.A. § 15-16-3(b), (e)(4).

D. State Investigation and Suspension

The State, not counties, has the right to investigate and suspend sheriffs. If a sheriff is suspected of any misconduct, the Governor may initiate an investigation and may suspend the sheriff. O.C.G.A. § 15-16-26(a), (c).[19] The investigation is con *1336 ducted by a committee, composed of two sheriffs, who are selected by the Governor, and the State Attorney General, and is funded by the State. O.C.G.A. § 15-16-26(a). Within thirty days, the committee provides the Governor a report of its investigation. O.C.G.A. § 15 — 16—26(b). If the committee recommends suspension, the Governor may suspend the sheriff for up to sixty days and may extend that suspension for thirty additional days. O.C.G.A. § 15-16-26(c). The Governor also is “authorized to request the district attorney of the county of the sheriffs residence to bring a removal petition against the sheriff.” Id.[20]

E. Lack of County Control over Sheriff and Deputies

In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs’ law enforcement function. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and pobcies. Counties also have no role in the training or supervision of the sheriffs deputies. Instead, sheriffs exercise authority over their deputies independent from the county. Sheriffs alone hire and fire their deputies. O.C.G.A. § 15 — 16— 23; Wayne County v. Herrin, 210 Ga.App. 747, 751, 437 S.E.2d 793 (1993).
Georgia courts have concluded that sheriffs’ deputies are employees of the sheriff and not the county. Warren v. Walton, 231 Ga. 495, 499, 202 S.E.2d 405 (1973) (recognizing that “[djeputy sheriffs ... are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge”) (internal quotation marks omitted); Drost v. Robinson, 194 Ga. 703, 710, 22 S.E.2d 475 (1942); Brown v. Jackson, 221 Ga.App. 200, 201, 470 S.E.2d 786 (1996) (noting deputy sheriffs “were employees of the sheriff and not Peach County”); Herrin, 210 Ga.App. at 751, 437 S.E.2d 793; Pettus v. Smith, 174 Ga.App. 587, 588, 330 S.E.2d 735 (1985); cf. Boswell v. Bramlett, 274 Ga. 50, 51, 549 S.E.2d 100 *1337 (2001) (“[EJmployees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority.”).
Georgia courts also speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities. Wayne County Bd. of Comm’rs v. Warren, 236 Ga. 150, 152, 223 S.E.2d 133 (1976) (“[A] county has no liability in connection with the violations of the civil rights of any person by a county officer.”); Brown, 221 Ga.App. at 201, 470 S.E.2d 786 (affirming summary judgment for Peach County because the Peach County sheriff, not Peach County, was the proper party to sue); Lowe v. Jones County, 231 Ga.App. 372, 373, 499 S.E.2d 348 (1998) (concluding “deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal”) (emphasis added); Pettus, 174 Ga.App. at 588, 330 S.E.2d 735 (affirming summary judgment for county board of commissioners and concluding, “[a]s the county commissioners had no control over the official duties of the deputy sheriff ..., they had no duty to determine whether a high-speed driving course rather than a defensive driving course was reasonably required to be supplied to deputy sheriffs”); Chadwick v. Stewart, 94 Ga.App. 329, 329, 94 S.E.2d 502 (1956).[21] In two of these cases concluding that the county was not liable, the plaintiffs brought actions against the sheriff as a defendant in his official and individual capacities and separately against the county as a defendant. Brown, 221 Ga.App. at 201, 470 S.E.2d 786 (Peach County sheriff, not Peach County, was the proper party to sue); Lowe, 231 Ga.App. at 373, 499 S.E.2d 348 (noting that plaintiff brought action against county as well as sheriff in official capacity).
Likewise, Georgia courts have concluded that counties are not liable for, and not required to give sheriffs money to pay, judgments against sheriffs in civil rights actions. See Wayne County Bd. of Comm’rs v. Warren, 236 Ga. 150, 152, 223 S.E.2d 133 (1976) (stating a county has no liability for the violations of the civil rights of any person by a county sheriff). The Georgia Supreme Court in Warren quoted a Georgia statute stating that “[a] county is not liable to suit for any cause of action unless made so by statute.” Id. at 151, 223 S.E.2d 133 (quotation marks omitted).[22] Thus, by statute, the county was *1338 not liable. In addition, the Georgia Supreme Court concluded that “there is no duty of the county to furnish the sheriff with money to settle a civil rights judgment against him.” Id. at 152, 223 S.E.2d 133.

F. County Civil Service Systems

The independence of sheriffs from counties is further shown by Georgia law’s treatment of sheriffs and county civil service systems. Although counties may adopt civil service systems, sheriffs have independent authority to hire their deputies and to decide whether their deputies are placed under a county civil service system. See O.C.G.A. §§ 15-16-23; 36-1-21(Supp.2002); Brett v. Jefferson County, 123 F.3d 1429, 1434 (11th Cir.1997); Wayne County v. Herrin, 210 Ga.App. 747, 753, 437 S.E.2d 793 (1993); cf. Gwinnett County v. Yates, 265 Ga. 504, 508, 458 S.E.2d 791 (1995) (concluding that a county “can take no action affecting” the employees of an elected official, unless the elected official has placed his office under a county’s civil service system). For example, in Herfin, the Georgia Court of Appeals examined O.C.G.A. § 36-1-21, which allows counties to create a civil service system and to include employment positions with elected county officers in that system “ 'upon the written application of the elected county officer.’ ” 210 Ga. App. at 748-50, 437 S.E.2d 793 (quoting O.C.G.A. § 36 — 1—21(b)).[23] The Georgia court concluded (a) that “deeply embedded in our case law is the notion that the sheriff alone has the authority and power to appoint and fire deputies,” but (b) that “the General Assembly has definitely and positively provided for the creation of county civil service systems and conferred on elected officials [such as the Wayne County Sheriff] the ability to bring all employees in their office into the system.” Id. at 751, 753, 437 S.E.2d 793.

G. County Police Department

The counties’ lack of authority and control over sheriffs starkly contrasts with the counties’ powers over their own county police department. Georgia counties have law enforcement power only to the extent delegated by the State. The Georgia legislature authorizes county governing bod *1339 ies to create a county police force through a resolution or ordinance of the particular county governing body followed by the approval of qualified county electors. O.C.G.A. § 36 — 8—1(b). The county governing body controls the hiring and removal of its county police and may “abolish a county police force at any time.” O.C.G.A. § 36-8-2. County police officers are subject to the “direction and control of the county governing body.” O.C.G.A. § 36-8-5. County police officers have “[t]he same power to make arrests and to execute and return criminal warrants and processes in the county of their election or appointment ... as sheriffs have.” O.C.G.A. § 36-8-5(1).
The net result is that, under Georgia law, the county police department is the vehicle through which a county fulfills its policing functions, but the sheriffs office is a vehicle through which the State fulfills part of its policing functions. The Clayton County Sheriff does not receive any of his law enforcement powers from the defendant Clayton County.

li. County Treasury

We acknowledge that Georgia law grants the county significant control of the “purse strings” of the sheriffs office. The county governing body sets the total amount of the sheriffs operating budget, pays the sheriffs salary, and pays the premium for the sheriffs official bond. See O.C.G.A. §§ 36-5-22.1, 15-16-20, 45-4-7, 15-16-5; Chaffin v. Calhoun, 262 Ga. 202, 203, 415 S.E.2d 906 (1992). This financial control, nonetheless, is attenuated because (a) the State mandates the minimum salary and the minimum bond amount for sheriffs, and (b) the Georgia Supreme Court has held that the budget “must provide reasonably sufficient funds to allow the sheriff to discharge his legal duties,” and that “the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties.” Chaffin, 262 Ga. at 203-04, 415 S.E.2d 906;[24] of. Boswell v. Bramlett, 274 Ga. 50, 52, 549 S.E.2d 100 (2001) (concluding county government approves the superior court clerk’s budget but does not control how that constitutionally elected *1340 officer spends the budget). Georgia’s Constitution further prevents counties from taking any action affecting any elective county office or the personnel thereof. Ga. Const, art. IX, § 2, ¶ 1(c)(1). Payment of a sheriffs salary and for equipment from county funds, when required by the state legislature, does not establish county control over the sheriffs law enforcement conduct and policies.[25]

I. State Sovereign Immunity

That Georgia law extends the State’s sovereign immunity to sheriffs is further indicia that sheriffs act on behalf of the State.[26] The Georgia Constitution specifically provides that “sovereign immunity extends to the state and all of its departments and agencies.” Ga. Const, art. I, § 2, ¶ 9(e). Georgia courts have interpreted this provision to grant sovereign immunity to sheriffs. Cantrell v. Thurman, 231 Ga.App. 510, 514-15, 499 S.E.2d 416 (1998) (concluding that although sheriff is entitled to sovereign immunity under Article I, § 2, para. 9(e), that immunity is waived in any action against the sheriffs official bond, as the bond falls under the written contracts exception to state sovereign immunity in Article I, § 2, para. 9(c)).[27]
The argument is made that the sheriffs immunity stems from the county, not the state, that the county’s immunity controls when the sheriff is sued, and that the county defends the sheriff. The decisions relied upon for this argument involve the county’s purchase of motor vehicle insurance and the sheriffs immunity being waived to the extent that the county purchases motor vehicle insurance and defends the claim. See, e.g., Cameron v. Lang, 274 Ga. 122, 126, 549 S.E.2d 341 (2001); Gilbert v. Richardson, 264 Ga. 744, 747, 452 S.E.2d 476 (1994).
But this waiver occurs only because a Georgia statute grants counties limited authority to waive sheriffs’ immunity with respect to motor vehicle liability. See O.C.G.A. § 33-24-51 (granting the county discretion to purchase motor vehicle insurance and providing immunity is waived to the extent of the amount of insurance).[28] *1341 In Georgia, sovereign immunity may be waived only if a statute expressly provides that sovereign immunity is waived and the extent of such waiver. Ga. Const, art. I, § 2, ¶ 9(e); see, e.g., Cameron, 274 Ga. at 126 n. 25, 549 S.E.2d 341; Woodard v. Laurens County, 265 Ga. 404, 405, 456 S.E.2d 581 (1995).[29]
While this waiver statute ties the sheriffs sovereign immunity to the county’s for motor vehicles, the sheriffs general sovereign immunity granted under Georgia’s Constitution is independent from the county’s immunity. See Cantrell, 231 Ga.App. at 514-15, 499 S.E.2d 416; Seay v. Cleveland, 270 Ga. 64, 65-66, 508 S.E.2d 159 (1998). For example, in Seay, the plaintiffs sued the sheriff in his official capacity, alleging (1) that the sheriff was hable for his deputies’ negligent disbursement of funds at a sheriffs sale and (2) that the sheriff negligently supervised his deputies. 270 Ga. at 65-66, 508 S.E.2d 159. In Seay, the Georgia Supreme Court concluded that the plaintiffs’ “claims against [Sheriff] Seay in his official capacity are precluded under the doctrine of sovereign immunity and it has not been established in this case that such immunity has been waived.” Id. at 65, 508 S.E.2d 159. Nor has it been established, or even claimed, in the present case that the sheriffs sovereign immunity has been waived as it relates to his general law enforcement function or his office’s involvement in the CJIS systems in issue.[30]

J. Defendant Clayton County

Judge Barkett’s concurring opinion actually acknowledges that under Georgia law a sheriff (1) is not an employee of the Clayton County Commission; (2) is not subject to any control by that County Commission; and (3) is independent from that County Commission. (Concurring Opinion, Barkett, J., pp. 1351-52, 1356-57, 1362-64). This concurring opinion attempts to circumvent the sheriffs independence from the defendant Clayton County by reframing the issue as “not whether a county commission controls the sheriffs office but whether the county controls the sheriffs office.” (Concurring Opinion, Barkett, J., p. 1362). It argues (1) that the defendant Clayton County is not one “monolithic structure of county government with the county commission at its head,” (2) that the sheriff and the county *1342 commission serve as subunits of the defendant Clayton County, each sharing equally in the governmental powers of the defendant Clayton County, and (3) that the sheriff is the final policymaker for the defendant Clayton County in the area of law enforcement. Id. at p. 1351-52.
Thus, this concurring opinion raises this structural issue: whether (1) the sheriffs constitutional office is a separate entity independent from the defendant Clayton County, or (2) whether the sheriffs office and the Clayton County Board of Commissioners, as subunits, share the powers of the defendant Clayton County. The answer is the sheriffs office is an independent entity and not a subunit of the defendant Clayton County for two reasons. First, Georgia law provides that the sheriffs office derives its law enforcement powers only from the State and not the defendant Clayton County, 'and that the sheriffs constitutional office is independent from the defendant Clayton County. Georgia’s Constitution even precludes the defendant Clayton County from taking any action affecting the sheriffs office.
Second, contrary to this concurring opinion, the defendant Clayton County is headed by its Board of Commissioners. Under Georgia law, the defendant Clayton County is a “body corporate” capable of suing and being sued and is headed by the county governing body, the Clayton County Board of Commissioners. Ga. Const, art. 9, § 1, 1 (“Each county shall be a body corporate and politic with such governing authority ... as provided by law.”); O.C.G.A. §§ 36-1-3 (“Every county is a body corporate, with power to sue or be sued in any court.”); l-3-3(7) (defining “County governing authority” as “the board of county commissioners, the sole county commissioner, or the governing authority of a consolidated government”). For example, the Clayton County Board of Commissioners is “expressly given complete power, authority, and control relative to all county matters of Clayton County.” Ga. Laws 1983, p. 4509, § 3.
As example of the county governing body’s head role, only the county governing body may enter into contracts for the county entity.[31] The defendant Clayton County is not contractually bound by contracts entered into by the sheriff. As noted earlier, the defendant Clayton County also has no tort liability for the conduct of the sheriff and his deputies.[32]
*1343 The fact that the defendant Clayton County is headed by its Board of Commissioners also is shown by how service of process in an action against Clayton County is sufficient under Georgia law only if served upon a majority of the county commissioners or upon the chairman of the board of county commissioners.[33] That the defendant Clayton County is headed by its county governing body, the Clayton County Board of Commissioners, is demonstrated forcefully by the fact that the plaintiff Grech actually served process on the defendant Clayton County by serving Crandall Bray, the Chairman of the Clayton County Board of Commissioners.
Our precedent, as well as Monell, instructs that a local governmental entity— here the defendant Clayton County as headed by the Clayton County Board of Commissioners — is not liable for § 1983 violations except for those policies and customs for which the county entity has some control and responsibility.[34] Holding the defendant Clayton County entity liable here, in the absence of any corporate control over the sheriff by that county entity, would ignore Monell’s and Georgia law’s conception of counties as corporations that act through a governing body, would substitute a conception of counties as mere units of geography, and would impose even broader liability than the respondeat superior liability rejected in Monell. Turquitt, 137 F.3d at 1291. Indeed, holding the defendant Clayton County liable for the law enforcement actions of the sheriff over whom it has no control would impose strict liability on that defendant county entity.

K. Geographic Label

All of this Georgia law points to the conclusion that sheriffs are not county policymakers as to their law enforcement functions.[35] Georgia’s Constitution, stat *1344 utes, and decisional law evince state empowerment of and control over sheriffs and a notable absence of county control. This absence requires our conclusion that the “county officer” nomenclature contained in Georgia’s Constitution reflects a geographic label defining the territory in which a sheriff is elected and mainly operates and it does not make a sheriff a county policymaker.[36]
Nonetheless, under McMillian, we still must consider the particular law enforcement conduct of the sheriff in issue, which is the sheriffs entry and validation of warrants on the CJIS systems and his training and supervision of employees in that regard. We now review how this particular law enforcement function is controlled by the State, not counties, under Georgia law.
IV. WARRANT INFORMATION

A. Georgia Crime Information Center

The Georgia legislature established the Georgia Crime Information Center (“GCIC”) to create a “system for the intrastate communication of vital information relating to crimes, criminals, and criminal activity.” O.C.G.A. § 35-3-31(a). The GCIC is a division of the Georgia Bureau of Investigation, a state agency. O.C.G.A. §§ 35-3-2; 35 — 3—31(a). Responsibility for the GCIC is vested with the “Director” of the center, with the guidance of the GCIC Council.[37] O.C.G.A. § 35-3-31(b).
The GCIC is charged with operating an information system for all crime and offender data, including warrant information. O.C.G.A. § 35-3-33. The GCIC has devel *1345 oped the “Criminal Justice Information System” (“CJIS”), which is defined as “[a]ll of those agencies, procedures, mechanisms, media, and forms, as well as the information itself, which are or which become involved in the organization, transmittal, storage, retrieval, and dissemination” of crime-related information. Ga. Comp. R. & Regs. r. 140-l-.02(2)(b).
The GCIC Director and the GCIC Council promulgate extensive rules and regulations (the “GCIC Council Rules”) for the operation of the CJIS system. See O.C.G.A. § 35-3-32(b)(2), (3), & (5). GCIC Council Rules govern the conduct of the Clayton County Sheriffs Office relating to the CJIS system. Ga. Comp. R. & Regs. r. 140-2-01(1). As a participant in the CJIS system, the sheriffs office in each Georgia county enters and removes warrant information on the local CJIS terminal, which is in turn connected with the GCIC’s statewide CJIS network. Indeed, within the Clayton County Sheriffs Office, employees enter data from the local CJIS system onto the GCIC’s CJIS network from the same local CJIS computer terminal. The GCIC Council Rules regulate every aspect of warrant information, from the employee training to when and how a sheriffs office must enter and validate warrant data.[38]

B. GCIC’s Required, Training

The GCIC Council Rules establish training requirements for employees in each sheriffs office. See Ga. Comp. R. & Regs, r. 140-2-.16. A Terminal Agency Coordinator (“TAC”) is an employee of the sheriffs office, designated by the sheriff, to serve as a liaison between the sheriff and the GCIC for CJIS network-related matters.[39] This TAC employee is trained by GCIC personnel and is subject to certification testing. Ga. Comp. R. & Regs. r. 140-2-.16(3)-(4). The TAC is responsible for record validations, hit confirmations, and training of Terminal Operators. Ga. Comp. R. & Regs. r. 140 — 2—.16(3).
A Terminal Operator[40] is also an employee of the sheriffs office who enters data in the GCIC’s CJIS network. Terminal Operators must complete GCIC training workbooks and certification requirements. Ga. Comp. R. & Regs. r. 140-2-.16(5)-(6). Terminal Operators enter criminal warrants into the CJIS network and annually validate them. In the Clayton County Sheriffs Office, these employees use the local CJIS system to gather warrant information and then enter it into *1346 the GCIC’s CJIS system through the local CJIS terminal.

C. Data Entry and Maintenance

To facilitate the sharing of criminal information, GCIC Council Rules specify the codes, formats, and operating procedures that must be used in entering records, including warrants, into the CJIS network terminals. Ga. Comp. R. & Regs. r. 140-2-.13(a).[41] To ensure its procedures are followed, the GCIC provides procedural manuals and operations bulletins, which contain the necessary codes, procedures and guidance for record entry.[42] Ga. Comp. R. & Regs. r. 140-2-.13(a). The State publishes a CJIS Manual, which the Clayton County Sheriffs Office lists in its Standard Operating Procedures as a manual required to be kept at its Warrant Office computer terminal.
Due to the interdependence of the statewide and local CJIS networks, the local CJIS terminals in the Clayton County Sheriffs Office are subject to GCIC security requirements. The Standard Operating Procedure manual for the Clayton County Sheriffs Office provides that “[ajccess control to both the local level and GCIC [stateside CJIS] ... is an automated function of the local CJIS system.” An operator must have a user account and password for access to the local CJIS system. The operator also must have a user account and a password that will clear them for access to the GCIC’s statewide CJIS network or the local CJIS terminal will not allow access to the statewide network.

D. Validation of Warrants

Sheriffs offices are required to participate in the GCIC’s record verification program, which prescribes the procedures for reviewing the validity of warrant entries contained on the GCIC’s CJIS network. Ga. Comp. R. & Regs. r. 140-2-.14. These procedures include reviewing monthly validation listings sent out by the GCIC and checking in some manner with the issuing authority to verify that a warrant has not been recalled or withdrawn.[43] Ga. Comp. R. & Regs. r. 140-2-.14(l)(b)-(c). Warrant record entries that are no longer valid must be cancelled, and warrant record entries containing erroneous information must be supplemented or corrected. Ga. Comp. R. & Regs. r. 140 — 2—.14(l)(c)(l)— (2).[44]

*1347
E. GCIC Audits and Sanctions

The GCIC Council Rules require a biannual audit of the Clayton County Sheriff’s Office. The GCIC Council Rules explicitly make warrant “validation procedures, records, and supporting documents ... subject to GCIC and NCIC audits.” Ga. Comp. R. & Regs. r. 140-2-.07G); 140-2-.14(2). Auditors obtain a statistical sample of active wanted, missing person, and stolen vehicle files from the Sheriffs Office and review its files for compliance with the GCIC rules and regulations, including a review of its training records and validation procedures. See Ga. Comp. R. & Regs. r. 140-2-07(2). If the Sheriffs Office violates GCIC Council Rules or network policies, then it is subject to a broad array of sanctions, including suspension or revocation of GCIC network access. Ga. Comp. R. & Regs. r. 140-2-19(1). Such disciplinary action may be instituted and implemented only by the GCIC.[45]
This review of Georgia law demonstrates not only an absence of county control, but also that sheriffs act for and are controlled by the State in their law enforcement function relating to criminal information on the CJIS systems in issue and in their training and supervision of their employees in that regard.
V. SHERIFF IS NOT A COUNTY POLICYMAKER

A. Absence of County Control

In Georgia, a county has no authority and control over the sheriffs law enforcement function. Clayton County does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office, much less how to record criminal information on, or remove it from, the CJIS systems involved in this case. Instead, the sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace in general and in relation to the CJIS systems in particular.[46]
The counties’ lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct. For example, if a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs no § 1983 liability for it. A sheriffs policy or practice cannot be said to speak for the county because the county has no say about that policy or practice. As we have stated before, a county is liable under § 1983 only for acts for which the county is actually responsible. See Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc).
*1348 Thus, we conclude today that the Clayton County Sheriff is not a county policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard. Accordingly, the defendant Clayton County has no § 1983 liability for the acts and policies of the sheriff and his employees in this case.

B. Prior Decisions

This Court has never before decided en banc whether Georgia sheriffs are policymakers for counties whén performing their law enforcement function. We think that no panel actually has decided the question before this case. In prior § 1983 cases, we accepted official capacity suits against Georgia sheriffs as suits against their respective counties. See Alexander v. Fulton County, 207 F.3d 1303, 1322 n. 14 (11th Cir.2000) (stating “[plaintiffs’ suit against Sheriff Barrett in her official capacity is the functional equivalent of suing the County”);[47] Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir.1999) (stating that “[although [plaintiff] Wayne did not sue Dekalb County itself, his claim against Sheriff Jarvis in his official capacity is a claim against Dekalb County5’)-[48] In these cases, we did not decide whether, under Georgia law, sheriffs are agents for the state or the counties, and it does not appear the parties raised the question. Further, in Vineyard v. County of Murray, 990 F.2d 1207 (11th Cir.1993), the parties did not challenge on appeal the district court's jury instruction that the sheriff had authority to make policy for Murray County, Georgia, in the area of law enforcement. See id. at 1210. Thus, we did not decide the issue in Vineyard either.[49]
To the extent that Grech argues that our prior decisions decide that Georgia sheriffs are county policymakers under 42 U.S.C. § 1983, we reject that argument.
*1349 VI. CONCLUSION
Accordingly, we affirm the district court’s order granting summary judgment in favor of the defendant Clayton County.
AFFIRMED.

. The bench warrant, referencing the DUI and speeding charges, was not removed from the local CJIS until after Grech was arrested on July 3, 1998. But, back in 1985, that Grech had entered pleas to those charges was noted on the local CJIS system. Both Captain Tommy Glaze and Warrant Officer Melba Hensel testified that there may have been an error in that CJIS entry because the entry date shown for the pleas was March 16, 1985 (when the ticket was issued) and not July 12, 1985 (when Grech actually pled).

. Grech’s complaint sued for false arrest and denial of his due process rights in violation of both the Georgia Constitution and the United States Constitution.

. Grech's complaint also contained state law claims for intentional infliction of emotional distress, false arrest, and false imprisonment. In its summary judgment motion, Clayton County argued that all state law claims were barred by sovereign immunity. In his briefs in the district court and on appeal, Grech did not oppose judgment for Clayton County on the state law claims. Thus, we do not discuss those claims further.

. Clayton County's motion also argued that, in any event, Grech failed to produce evidence of an unconstitutional policy or custom which was the moving force behind any alleged constitutional violation. The district court did not address this issue.

. "[I]t is when execution of a [county’s] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the [county] as an entity is responsible under § 1983.” Monell, 436 U.S. at 694, 98 S.Ct. 2018. This " 'official policy' requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which, the municipality is actually responsible.” Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (third emphasis added); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir.1987) (interpreting "Monell as requiring that '[t]he municipality must be at fault in some sense for establishing or maintaining the policy which causes the injurious result...' ").

. A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy. Monell, 436 U.S. at 690-91, 98 S.Ct. 2018; Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir.1994). A single incident would not be so pervasive as to be a custom or practice. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality) (stating that when establishing liability for a custom or practice, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell").

. In McMillian v. Johnson, 88 F.3d 1573 (11th Cir.1996), aff'd sub nom McMillian v. Monroe County, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), we similarly determined that the Alabama Constitution's designation of a sheriff as a state official was relevant, but not dispositive, in determining whether a sheriff exercises state or county power. Id. at 1580-81. We viewed the designation of the sheriff as a state official as evidence of the county’s lack of law enforcement power. Id. at 1581 n. 4 ("We base our decision not on a sheriffs 'label,' but on the county's lack of law enforcement power, of which a sheriff's designation as a state official is evidence.'').

. In Turquitt, we explained that "because counties have no control over sheriffs, allowing county liability for a sheriff's actions would ignore Monell's conception of municipalities as corporations and substitute a conception of municipalities as mere units of geography ... [and] would impose even broader liability than the respondeat superior liability rejected in Monell.” 137 F.3d at 1291 (quoting McMillian v. Johnson, 88 F.3d at 1577).

. In McMillian, the Supreme Court instructed that the policymaker question is not whether the sheriff acts for the state or county "in some categorical, 'all or nothing' manner” but whether the sheriff is a final policymaker for the state or county "in a particular area, or on a particular issue.” 520 U.S. at 785, 117 S.Ct. 1734.

. The arguments in Judge Barkett’s concurring opinion erroneously reject the relevance of McMillian's functional and control analysis to this case. Like Georgia law, Alabama law also characterizes the sheriff as a county official. Indeed, the plaintiff in McMillian stressed that Alabama statutes and court rulings refer to the sheriff as a county official. McMillian, 520 U.S. at 798, 117 S.Ct. 1734. Nonetheless, the McMillian majority examined both the sheriff's function and the county’s lack of control and broadly concluded that Alabama sheriffs, when acting in a law enforcement capacity, are § 1983 policymakers for the state, and not the county. McMillian, 520 U.S. at 784, 791, 117 S.Ct. 1734. Although the Supreme Court in McMillian emphasized that courts should consider the particular area or function in issue, it did not restrict its inquiry to whether the sheriff acted for the State or county in intimidating witnesses and suppressing evidence-the specific conduct in issue. Instead, the Supreme Court defined the area or function in issue as whether the sheriff "represents the State or the county when he acts in a law enforcement capacity” and answered that question. Id. at 785-86, 117 S.Ct. 1734.

. Georgia's Constitution provides that sheriffs "shall be elected by the qualified voters of their respective counties for terms of four years and shall have such qualifications, powers, and duties as provided by general law." Ga. Const, art. IX, § 1, ¶ 3(a) (emphasis added). That paragraph also provides that the "[c]ounty officers ... may be on a fee basis, salary basis, or fee basis supplemented by salary,” but that “[m]inimum compensation for said county officers may be established by the General Assembly by general law" and supplemented by local law or by action of the county governing body. Ga. Const, art. IX, § 1, ¶ 3(b) (emphasis added).

. Georgia's Constitution provides that the legislative "power granted to counties ... shall not be construed to extend to ... [a]ction affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority.” Ga. Const, art. IX, § 2, ¶ 1(c)(1).

. Although Warren involved a prior version of the Georgia Constitution, the same relevant language is in the present version of the Georgia Constitution. See Warren, 231 Ga. at 499, 202 S.E.2d 405. The plain language of Georgia's Constitution provides that the powers and duties of the sheriff's office are established by the State legislature by general law. See supra note 11. Georgia's Constitution goes further and precludes counties from taking any action to affect the sheriff's office. See supra note 12. Contrary to the position in Judge Barkett’s concurring opinion, the plain language of Georgia's Constitution makes the powers and duties of the constitutional sheriff's office alterable by the Georgia legislature and unalterable by the county or the county governing body.

. Other state actors available for law enforcement activity include the Georgia Bureau of Investigation and the Georgia State Patrol. See O.C.G.A. § 35-3-3 et seq. (GBI); § 35-2-30 et seq. (GSP).

. See Hannah v. State, 212 Ga. 313, 321, 92 S.E.2d 89 (1956) ("The office of sheriff carries with it ... all of its common-law duties and powers, except as modified by statute.”). The sheriff's office is as old as the State of Georgia, administers the law enforcement powers of the State, and is a constitutionally protected office independent from county government. See infra Section III(J). The Georgia Attorney General has explained that under Georgia law, sheriffs have statutory duties and also all of their common law duties and powers unless modified by statute, and that these duties include enforcing the laws and conserving the peace. See Ga. Op. Atty Gen. No. 69-385 (1969); Ga. Op. Atty. Gen. No. *1334 77-83 (1977) (both construing former Georgia Code § 24-2813 (1933), now O.C.G.A. § 15-16-10). In addition, sheriffs must be state-certified peace officers, who are "vested ... with authority to enforce the criminal or traffic laws through the power of arrest and [are charged with the] preservation of public order, the protection of life and property, and the prevention, detection, or investigation of crime." O.C.G.A. § 35-8-2(8)(A).

. Regarding the historical evolution of sheriffs, McMillian stated that:
As the basic forms of English government were transplanted in [the United States], it also became the common understanding here that the sheriff, though limited in jurisdiction to his county and generally elected by county voters, was in reality an officer of the State, and ultimately represented the State in fulfilling his duty to keep the peace.
520 U.S. at 794, 117 S.Ct. 1734 (internal footnote omitted).

. In Georgia, superior courts of the county are the State's courts of general jurisdiction. See Ga. Const. Art. 6, § 4, ¶ 1; O.C.G.A. § 15-6-8.

. Unless the issue of unsafe jail conditions is properly before a trial court, only sheriffs have authority to order such prisoner transfers. In re Irvin, 254 Ga. 251, 253-54, 328 S.E.2d 215 (1985).

. The Governor may determine that an investigation of a sheriff "should be made as a result of criminal charges, alleged misconduct in office, or alleged incapacity of the sheriff to perform the functions of his office." O.C.G.A. § 15-16-26(a) (emphasis added). This investigation-suspension statute addresses the Governor’s authority and control over only the sheriff and grants broad investigation-suspension powers regarding a sheriffs misconduct in the performance of his duties. This statute does not cover county commissioners, and we can locate no parallel state statute granting the Governor the same express broad authority and control over county commissioners. Instead, a wholly distinct statute, O.C.G.A. § 45-5-6, addresses the removal of public officials, including county commissioners, but *1336 only in this limited situation: after a grand jury's indictment for a felony criminal charge and only if the felony indictment relates to the performance or activities of the public official's office. O.C.G.A. § 45-5-6(b).

. The Governor also may require further investigation "by the committee, by the Georgia Bureau of Investigation, by other law enforcement agencies of this state, or by any special committee appointed by the Governor for such purpose.” O.C.G.A. § 15-16-26(c). The judicial proceedings for removal of a sheriff are conducted in manner identical to those for the removal of a clerk of the superior court under O.C.G.A. § 15-6-82. O.C.G.A. §§ 15 — 16—10(b) (Supp.2002) & 42-4-4(c).
Judge Barkett's concurring opinion mistakenly relies on Cole v. Holland, 219 Ga. 227, 132 S.E.2d 657 (1963), which involved whether a criminal conviction must precede a petition to remove a sheriff from office. The Georgia Supreme Court rejected this argument that a conviction was a condition precedent to removal proceedings. Id. at 229, 132 S.E.2d 657. If anything, Cole illustrates the point that the county governing authority has no control over the sheriff. When the sheriff is suspected of misconduct in the performance of his duties, the Governor may initiate an investigation funded by the State government, and the Governor has the authority to suspend the sheriff. O.C.G.A. § 15-16-26. Significantly, no county governing authority has such power. The same concurring opinion also errs in how it relies on Gipson v. Bowers, 263 Ga. 379, 434 S.E.2d 490 (1993), for the proposition that the Governor “can take no official action against a sheriff unless there has been a criminal indictment" first. Id. at 379, 434 S.E.2d 490. This is because a wholly separate statute, O.C.G.A. § 45-5-6, does provide for removal of public officials, including the sheriff, upon a grand jury's indictment for a felony. The above Georgia statutes, however, independently address only the sheriff and the Governor’s investigation and suspension of the sheriff for any misconduct in office or the alleged incapacity of the sheriff, which do not require a criminal indictment. Compare O.C.G.A. § 15-16-26 with § 45-5-6.

. Lowe, Brown, and Pettus involve responde-at superior liability of the sheriff for his deputies' acts. The Chadwick court also cited former Georgia Code § 24-201 (1933), which provided: “All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions, suits, and disabilities whatever, which they, or either of them, shall incur in respect of any matter or thing whatever relating to or concerning their respective offices.” This section is now codified in O.C.G.A. § 15-13-1, which similarly provides: "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions and disabilities which they incur in respect of any matter or thing relating to or concerning their respective offices."

. The statute quoted in Warren is former Georgia Code § 23-1502 (1933), which is now O.C.G.A. § 36-1-4. In the subsequent decision of Chatham County Commissioners v. Rumary, 253 Ga. 60, 315 S.E.2d 881 (1984), the Georgia Supreme Court held that the Chatham County Board of Commissioners was required to pay a judgment against a deputy sheriff for damages in an automobile collision because Chatham County's own Code provided for the defense of the deputy at trial and payment of final judgments awarded in courts. Id. at 60-61, 315 S.E.2d 881. The Georgia Supreme Court emphasized that "[t]he nature of the Board’s liability here is not that of respondeat superior, but exists solely by virtue of its voluntary and self-imposed obligation to provide indemnification for the acts of its employees committed during the performance of their duties.” Id. at 61, 315 *1338 S.E.2d 881. There is no evidence in this case that Clayton County voluntarily has agreed to provide indemnification. To the contrary, Clayton County contends that it is not liable because the sheriff is not a policymaker for the county.

. In Herrin, when his term was about to end, the Wayne County sheriff applied to have positions in the sheriff's office made subject to the Wayne County personnel system. 210 Ga.App. at 748, 437 S.E.2d 793. Both Wayne County and Sheriff Warren “fully complied with all [the] requirements set forth in O.C.G.A. § 36 — 1—21(b) necessary to bring employees of the sheriff's office within the personnel system." Id. at 750, 437 S.E.2d 793. Reconciling O.C.G.A. §§ 15-16-23 and 36-1-21, the Georgia court held "that once positions in a sheriff’s office have been made subject to a personnel or civil service system, a sheriff’s authority to appoint deputies pursuant to O.C.G.A. § 15-16-23 is limited to vacancies” created by resignation, retirement, or removal under the applicable personnel or civil service system. Id. at 753, 437 S.E.2d 793.
This same O.C.G.A. § 36-1-21(b) was examined in Brett, 123 F.3d at 1434, in which this Court concluded that deputy sheriffs are "at-will” employees of the sheriff. We agreed with the district court that "the former deputy sheriffs had no protected property interest under Georgia law because [Sheriff] Compton’s efforts to place deputy sheriffs under the civil service system failed to satisfy the statutory requirements of O.C.G.A. § 36 — 1—21(b).” Id. Sheriff Compton had made an oral request, but had not completed the required written application. Id. In this case, there is no indication in the record that Clayton County has a civil service system or that the sheriff has taken any action to have his deputies subject to a county personnel system.

. In Chaffin, the county, over the sheriff's objection, shifted the responsibility for patrolling and drug enforcement to the new county police department and reduced the sheriff's budget by forty-seven percent. 262 Ga. at 202, 204, 415 S.E.2d 906. The trial court granted the county’s request for an injunction requiring the sheriff to cooperate in the implementation of the plan to transfer personnel and equipment to the newly created county police department. Id. at 202-03, 415 S.E.2d 906. The Georgia Supreme Court affirmed, holding that the trial court had not abused its discretion in finding that the remaining budget was sufficient to allow the sheriff to perform his duties. Id. at 204, 415 S.E.2d 906. In doing so, the Georgia Supreme Court reaffirmed that: (1) "Sheriff Chaffin is an elected constitutional officer,” Chaffin, 262 Ga. at 203, 415 S.E.2d 906 (citing Ga. Const, art. IX, § 1, ¶ 3(a)); (2) "[t]he sheriff is not an employee of the county commission,” Chaffin, 262 Ga. at 203, 415 S.E.2d 906 (citing Board of Commissioners of Randolph County v. Wilson, 260 Ga. 482, 396 S.E.2d 903 (1990)); and (3) although the county commission has the power to create a county police force, " ‘the commissioners could not divest the sheriff of his power and duty to enforce the laws and preserve the peace,’ ” either directly or indirectly by exercise of their fiscal authority or control of county property, Chaffin, 262 Ga. at 203, 415 S.E.2d 906 (quoting Wolfe v. Huff, 232 Ga. 44, 45, 205 S.E.2d 254 (1974)).
In another budget battle between the sheriff and county commission in Board of Commissioners of Randolph County v. Wilson, 260 Ga. 482, 396 S.E.2d 903, the sheriff requested $70,000 to pay deputies, but the county commission budgeted a lump sum of only $60,080. Id. at 482, 396 S.E.2d 903. The Georgia Supreme Court held that the county commission did not abuse its authority, viewing the case as "involving the power of the commission to approve the sheriff’s budget rather than the power of the sheriff to hire deputies.” Id. at 484, 396 S.E.2d 903.

. Alabama sheriffs are elected by county voters and paid from county funds, but the Supreme Court in McMillian found these factors insufficient to establish county control over sheriffs. See McMillian, 520 U.S. at 791, 117 S.Ct. 1734 ("The county’s payment of the sheriff's salary does not translate into control over [the sheriff], since the county neither has the authority to change his salary nor the discretion to refuse payment completely.’’). The Supreme Court also concluded that the ability of the county governing body to reduce the sheriff's budget so long as it remains reasonable results in "attenuated and indirect influence over the sheriff's operations.” See id. at 791-92, 117 S.Ct. 1734.

. While we discuss sovereign immunity solely for the sheriff's policymaker function under Georgia law, state sovereign immunity has no application in federal court in § 1983 cases. Instead, the Eleventh Amendment grants immunity to states from suits in federal courts. See, e.g., Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm’n, 226 F.3d 1226, 1231 (1 lth Cir.2000); Hufford v. Rodgers, 912 F.2d 1338, 1340-41 (11th Cir.1990). In addition, when parties raise federal claims under § 1983 in state courts, federal law must determine whether particular governmental entities are subject to suit. See Howlett v. Rose, 496 U.S. 356, 375-78, 383, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

. But see City of Thomaston v. Bridges, 264 Ga. 4, 7, 439 S.E.2d 906 (1994) (holding that the phrase "state and all its departments and agencies" does not include municipalities); Thomas v. Hosp. Auth. of Clarke County, 264 Ga. 40, 42, 440 S.E.2d 195 (1994) (concluding hospital authority — although a governmental instrumentality — is not an agency or department of the state entitled to sovereign immunity).

. See, e.g., Cameron, 274 Ga. at 126-27, 549 S.E.2d 341; Gilbert, 264 Ga. at 748-51, 452 S.E.2d 476; cf. Woodard v. Laurens County, 265 Ga. 404, 405, 456 S.E.2d 581 (1995). Cameron and Gilbert treated the official ca *1341 pacity claims against the sheriff as claims against the county, determined that the sheriff sued in his official capacity was entitled to the benefit of the county’s sovereign immunity, and concluded that the sheriff's immunity was waived to the extent the county had purchased insurance.
County immunity stems in large part from O.C.G.A. §§ 33-24-51(a) and 36-1-4, which provide that a county is not liable to suit for any cause of action unless made so by statute.

. In addition, the Georgia Constitution provides that "[n]o waiver of sovereign immunity ... shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.” Ga. Const, art. I, § 2, ¶ 9(f).

. Judge Barkett’s concurring opinion also relies on Haywood v. Hughes, 238 Ga. 668, 235 S.E.2d 2 (1977), for the proposition that counties, by statute, are authorized to pay for the sheriff's legal costs in civil rights suits by third parties against sheriffs. See O.C.G.A. § 45-9-21. In Haywood, however, the Georgia Supreme Court emphasized that the statute authorizes counties to do so "in their discretion” and ”give[s] the county considerable latitude in determining what actions will be defended.” Id. at 669, 235 S.E.2d 2 (citing Ga.Code Ann. § 89-945, which is now O.C.G.A. § 45-9-21). In Haywood, the Glascock County Commissioners had adopted, at a special meeting, a policy to pay attorney's fees in two specific actions by third parties against the sheriff. Id. If anything, this case demonstrates that the defendant Clayton County is not required to pay the sheriff's attorney’s fees in actions by third parties.

. O.C.G.A. § 36-10-1 ("All contracts entered into by the county governing authority ... in behalf of the county shall be in writing and entered on its minutes.”); Ogletree v. Chester, 682 F.2d 1366, 1370 (11th Cir.1982) ("Under Georgia law, any contract entered into with other persons in behalf of a county must be in writing and spread on the official minutes of the [County] Commission. Where that procedure is not followed, there is no enforceable agreement.”) (internal citation omitted); Smith v. Murrath Enters., Inc., 243 Ga.App. 856, 857, 534 S.E.2d 125 (2000) ("No party is entitled to the benefits of an alleged contract with a county unless there has been a full compliance with [O.C.G.A. § 36-10-1].”); see also Waters v. Glynn County, 237 Ga.App. 438, 514 S.E.2d 680 (1999); Deason v. De-Kalb County, 222 Ga. 63, 65, 148 S.E.2d 414 (1966); Graham v. Beacham, 189 Ga. 304, 305-06, 5 S.E.2d 775 (1939); Carolina Metal Prods. Co.v. Taliaferro County, 28 Ga.App. 57, 110 S.E. 331 (1922).

. See, e.g., Boswell v. Bramlett, 274 Ga. 50, 51, 549 S.E.2d 100 (2001) ("[E]mployees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority.”) (emphasis added); Lowe v. Jones County, 231 Ga.App. 372, 373, 499 S.E.2d 348 (1998) (concluding "deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal”) (emphasis added); Brown v. Jackson, 221 Ga.App. 200, 201, 470 S.E.2d 786 (1996) (noting deputy sheriffs "were employees of the sheriff and not Peach County ") (emphasis added); Chaffin v. Calhoun, 262 Ga. 202, 203, 415 S.E.2d 906 (1992); Mobley v. Polk County, 242 Ga. 798, 801-02, 251 S.E.2d 538 (1979); Warren v. Walton, 231 Ga. 495, 498-500, 202 S.E.2d 405 (1973).
*1343 Judge Barkett's concurring opinion gives the mistaken impression that, under Georgia law, the county entity, here the defendant Clayton County, may be liable for the torts of a sheriff and his deputies. There is not a single Georgia case, however, holding a county liable for the torts of a sheriff or his deputies. The concurring opinion cites, for example, Feise v. Cherokee County, 207 Ga.App. 17, 427 S.E.2d 294 (1992), but the Georgia Supreme Court granted certiorari and remanded Feise, and on remand the Georgia Court of Appeals entered summary judgment in favor of the defendant county. Feise v. Cherokee County, 209 Ga.App. 733, 733-34, 434 S.E.2d 551 (1993). Instead, as explained above and in Section III(E), Georgia courts speak with unanimity in concluding that a county cannot be held liable for the actions of the sheriff or his deputies.

. O.C.G.A. § 36-1-5; see Board of Comm'rs of Newton County v. Allgood, 234 Ga. 9, 14, 214 S.E.2d 522 (1975); Clayton County v. Sarno, 112 Ga.App. 379, 379-80, 145 S.E.2d 283 (1965).

. Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (“[Mjunicipal liability is limited to action for which the municipality is actually responsible.”); Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc) (stating that a county is "liable under section 1983 only for acts for which [the county] is actually responsible”); Turquitt v. Jefferson County, 137 F.3d 1285, 1292 (11th Cir.1998)(en banc) ("[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control.”); Brooks v. Scheib, 813 F.2d 1191, 1192-93 (11th Cir.1987).

.The district courts in our circuit have reached similar conclusions in holding that Georgia sheriffs are not county policymakers under § 1983. See Fletcher v. Screven County, 92 F.Supp.2d 1377, 1379-80 (S.D.Ga.2000) (concluding in a § 1983 action that although Georgia law declares sheriffs to be county officers, and directs that counties elect and pay their sheriffs, it cedes to counties no meaningful level of control over a sheriff’s law enforcement activities); Frazier v. Smith, 12 F.Supp.2d 1362, 1369 (S.D.Ga.1998) (declining to dismiss action against the sheriff in his official capacity as redundant to the action against the county because "Sheriff Smith acts independently of Camden County, except for the County's fiscal review and support of *1344 the Sheriffs department” and "[t]here is no evidence ... to support the conclusion that Sheriff Smith is an agent of Camden County, or that the County ultimately is liable for his misconduct”); Duffey v. Bryant, 950 F.Supp. 1168, 1174-75 (M.D.Ga.1997) (reviewing a § 1983 action against the sheriff and his deputies for the wrongful death of a county jail inmate and granting summary judgment for the defendant Cook County Board of Commissioners and its chairman because "[i]t is well-settled law in Georgia that a county and its commissioners are without authority over the sheriff or his deputies” and that its chairman “had no responsibility or authority for supervising or training officers”).

. Judge Barkett’s concurring opinion asserts that many Georgia cases refer to sheriffs as county officers. (Concurring Opinion, Bark-ett, J., p. 1354). The Georgia Constitution itself refers to the sheriff as a "county officer,” and that title never has been in dispute. The crucial fact, however, is that the sheriff's primary function under Georgia law is to administer the law enforcement and peacekeeping business of the State. While this concurring opinion argues that law enforcement is a county matter, it acknowledges that Georgia sheriffs "sometimes act on state matters” and at times "function with reference to State matters.” (Concurring Opinion, Bark-ett, J., p. 1355 (citations omitted)). This same concurring opinion also relies heavily on Truesdel v. Freeney, 186 Ga. 288, 197 S.E. 783 (1938) and describes Truesdel as a "foundational case.” Id. The issue in Truesdel, however, was whether the county board could fix the salary of the clerk of the municipal court. Id. Addressing the clerk’s argument that he was a state officer, the Georgia Supreme Court noted that the clerk (1) is selected by the judge of the municipal court, (2) serves in a ministerial function in the municipal court, and (3) "has no responsibility, so far as representing the State is concerned, in any matter in which the State is primarily interested.” Id. at 292, 197 S.E. 783. Based on these factors, the Georgia Supreme Court concluded that the clerk of a municipal court was not a state officer. Truesdel, a case about the clerk of a municipal court, has no relevancy to this case. Moreover, not a single case cited in this concurring opinion, or in footnote 12 thereof, holds a county or a county commission liable for the tortious acts of a sheriff or his deputies. (Concurring Opinion, Barkett, J., p. 1355-56 n. 12).

. The GCIC Council is a state regulatory body chaired by the Governor. O.C.G.A. § 35-3-32(c) (designating state Board of Public Safety as GCIC Council); O.C.G.A. § 35-2-1 (prescribing composition and appointment procedures for the Board of Public Safety).

. Although the focus of our inquiry is warrant data, the GCIC Council Rules govern virtually every aspect of participation in and use of the GCIC’s CJIS information and local CJIS terminals. See O.C.G.A. § 35-3-33(a)(ll) (mandating the GCIC to cooperate in creating a uniform interstate, national, and international system of crime information and criminal records). For example, the Rules prescribe how criminal information should be stored, who may receive it, and how it must be sent. See Ga. Comp. R. & Regs. r. 140-2-.02. The Rules also enumerate the physical security requirements for criminal information, including requiring secure areas out of public view for network access, secure areas for local CJIS network terminals, and requiring adequate backup for criminal information data. Ga. Comp. R. & Regs. r. 140-2-.08.

. A TAC is considered a "CJIS network agency employee, designated by the agency head” (here the sheriff) and is "responsible for ensuring compliance with state and federal policies, regulations and laws, established by the Georgia Crime Information Center (GCIC), the National Crime Information Center (NCIC), and the National Law Enforcement Telecommunications System (NLETS).” Ga. Comp. R. & Regs. r. 140-l-.02(2)(k).

. A Terminal Operator is a "full-time or part-time employee of a CJIS network terminal agency with one or more CJIS network terminals who performs services which include the operation of a CJIS network terminal as an integral part of assigned job duties.” Ga. Comp. R. & Regs. r. 140-l-.02(3)(e).

. The GCIC Council Rules require the Sheriff's Office to respond to “hit confirmation request messages’’ within specific, prescribed time frames depending on the priority of the request. Ga. Comp. R. & Regs. r. 140-2-.13(f).

. The GCIC Council Rules specify which data entry forms must be used, who is permitted to collect criminal information, and who has the duty to report information to the GCIC. See Ga. Comp. R. & Regs. r. 140-2-.03. When the Sheriff's Office desires to diverge from GCIC standards, it must receive approval from GCIC. See Ga. Comp. R. & Regs. r. 140-2-03(1) (alternative fingerprinting cards); Ga. Comp. R. & Regs. r. 140-2-03(3) (plans for automatic disposition reporting).

. In Clayton County, the courts also record entries on the local CJIS system and update them. Thus, the Sheriff's Office contends that it checked with the State Court about bench warrants by comparing the GCIC's CJIS entries with the State Court's local CJIS entries.

. Defendant Clayton County asserts that the 1985 bench warrant was facially valid and properly remained outstanding because that warrant was sufficient under Georgia law for a separate substantive charge of failure to appear, and this failure-to-appear charge never was resolved. See O.C.G.A. §§ 40-13-63; 16-10-51. In reply, Grech contends that the bench warrant effectively was resolved when he pled to the DUI and speeding charges, that the bench warrant should have been recalled at that time, and thus, that he was falsely arrested. The district court did not address the merits of Grech’s constitutional claims, and we need not decide these issues to resolve the § 1983 county policymaker question in this appeal.

. We address only the sanctions in the GCIC Council Rules. The Governor also has investigative and suspension powers over sheriffs for non-performance of their duties. See O.C.G.A. § 15-16-26.

. Judge Anderson’s concurring opinion more narrowly concludes that as "to the particular function at issue in this case, the Sheriff is acting on behalf of the state, and thus ... Clayton County is not liable in this case.” (Concurring Opinion, Anderson, J., p. 1349). Because no opinion obtained a majority of the Court, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.” Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks and citation omitted); see also Redner v. Dean, 29 F.3d 1495, 1499 (11th Cir.1994) ("When faced with a fragmented [Supreme] Court, we may distill the various opinions down to their narrowest grounds of concurrence to derive any binding precedent.”).

. In Alexander, the plaintiff employees brought Title VII and § 1983 claims against the defendants Fulton County and Sheriff Barrett, individually and in her official capacity. 207 F.3d at 1313-14. After discussing whether Sheriff Barrett in her individual capacity was entitled to qualified immunity, this Court did not address whether the County or the Sheriff in her official capacity were liable under § 1983 "[bjecause Title VII provide[d] an alternative basis for liability.” See id. at 1321-22. In a footnote, we did note that "[plaintiffs' suit against Sheriff Barrett in her official capacity is the functional equivalent of suing the County.” Id. at 1322 n. 14.

. In Wayne, the plaintiff inmate brought, inter alia, a § 1983 claim against the defendants Sheriff Jarvis in his official capacity and the Sheriff's Department based on their failures to provide adequate medical care and to protect him from other inmates. 197 F.3d at 1100-02. Dekalb County was not named as a defendant. We "proceed[ed] to address the merits of the district court's grant of summary judgment in favor of the County, which was properly sued in this case through the official capacity claim against the Sheriff.” Id. at 1105. As to the Sheriff's Department, we observed that "[t]he district court noted that 'under Georgia law, the Dekalb County Sheriff’s Department is not a legal entity that can be sued apart from the County.’ " Id. But we concluded that "[r]egardless of whether that is correct, because Wayne's official capacity claim against Jarvis is a claim against the County, his claim against the Sheriff's Department of the County is redundant.” Id.

.In Vineyard, the plaintiff, alleging that the sheriff's deputies beat him, sued Murray County and the sheriff in his official capacity, among others, under § 1983 because of inadequate policies of the supervision, training and disciplining of deputies, which caused the violation of the plaintiff’s rights. 990 F.2d at 1209. After a jury verdict against the sheriff in his official capacity and Murray County, they asserted errors on appeal, but did not challenge this jury instruction as error. See id.