Keishaun MOON, Plaintiff,

v.

ROCKDALE COUNTY, Rockdale County Sheriff Eric Levett, and Charles W. Smith, Individually and in his Official Capacity as an Officer of the Rockdale County Sheriff's Department, Defendants.

CIVIL ACTION FILE NUMBER
1:14-cv-3926-TCB

United States District Court,
N.D. Georgia, Atlanta Division.

Signed May 27, 2016

Jordan Alexander Johnson, The Law Offices of Jordan "Alex" Johnson, LLC, Atlanta, GA, for Plaintiff.

Terry Eugene Williams, Williams, Morris & Waymire, LLC, Buford, GA, for Defendants.

## ORDER

Timothy C. Batten, Senior United States District Judge

This case comes before the Court on Defendants' motion for summary judgment [31].

## I. Background

### A. Factual Background

On November 3, 2012, at approximately 11:36 p.m., Corporal Shasta Duren of the Rockdale County Sheriff's Office ("RCSO")[1] noticed a 2006 Chevrolet Equinox without functioning tag lights. Duren initiated a traffic stop. Jarret Jennings was driving the vehicle, and Plaintiff Keishaun Moon was in the front passenger seat.

Most of the relevant actions in this case were recorded by the "dash cam" video camera in Duren's patrol car. *See* [32] (dash cam video). Duren approached the driver's side door of the vehicle and spoke with Jennings. [32] at 1:21. Duren told

Jennings that she smelled marijuana coming from the vehicle, which Jennings denied. [32] at 3:42-4:00. Defendant Charles Smith, an RCSO Deputy, arrived at the scene to provide assistance. Smith approached the passenger's side door of the vehicle. [32] at 4:20. Smith claims that he, too, observed the smell of marijuana coming from the vehicle. [34-1] at ¶5-6.

Smith instructed Moon to step out of the vehicle and began to frisk him. [32] at 4:29. After conducting the frisk, Smith instructed Moon to stand in front of Duren's patrol car. Moon complied, and sat on the front of the patrol car. [32] at 5:13. Duren, Smith, and other officers that had arrived at the scene conducted a search of the vehicle that lasted approximately five-and-a-half minutes. During this time, Moon remained at the front of Duren's patrol car, and appears to have occasionally spoken with the officers on the scene, including Smith. *See* [32] at 5:20-5:27, 8:22-8:30, 12:18-12:22; *see also* [34] at 41:9-42:16. At one point, Duren asked Moon about his driver's license, and Moon spelled out his name. [32] at 11:30-11:53. Throughout this time, he was in full view of the officers, and his hands remained either at his sides or folded in front of his chest. At no time did he appear to put his hands near his face or mouth.

Duren placed Jennings under arrest for driving with a suspended license. [32] at 11:59. Smith helped Duren secure Jennings, and then approached the area where Moon was standing. [32] at 12:37. Another officer at the scene began questioning Moon, who stood up to allow the officer to pat him down. [32] at 12:38-12:59. While the audio recording is not clear, Moon appears to have answered the officer's questions.

---

1. The complaint uses the label "Rockdale County Sheriff's *Department*," but according

to Defendants the proper label is "Rockdale County Sheriff's *Office*."

After Moon sat back down on the patrol car, Smith shined his flashlight onto Moon's face. [32] at 13:06. Smith claims that he saw Moon attempting to swallow something, which he suspected was marijuana. [34-1] at ¶8.[2] Smith then placed his hand on Moon's throat, and in one continuous motion he pushed Moon backwards by the throat onto the hood of the patrol car. [32] at 13:07-13:10. Smith repeatedly told Moon to open his mouth. [32] at 13:10-13:18. Other officers approached, and Moon put his hands above his head. [32] at 13:14. Moon can be heard saying "I haven't swallowed anything" and "my mouth *is* open." [32] at 13:18-13:34. After approximately fifteen seconds, Smith released his grip on Moon's neck. [32] at 13:22. Smith directed Moon to stand up and face the patrol car, which Moon did. [32] at 13:25. Smith placed Moon in handcuffs and searched him again. [32] 13:32-14:46. No drugs were found, and Moon was led away in handcuffs. [32] at 14:47.

Moon was charged with disorderly conduct. In Rockdale County, it is considered disorderly conduct to "[w]illfully obstruct, resist, oppose or hinder any law enforcement officer in the lawful discharge of his official duties." Rockdale Cty. Ordinance § 66-1. The charge was later dismissed.

Moon alleges that Duren had no legitimate reason to stop Jennings's vehicle, and that Duren and Smith falsely claimed to smell marijuana as a pretext for searching the vehicle. He claims that Smith had no reason for grabbing his throat and pushing him by the throat onto the patrol car, and that Smith used excessive force.

## B. Procedural Background

Moon filed an amended complaint [14] that, while comporting with minimum standards under the federal rules, leaves ambiguity as to what claims he is asserting. Moon does not enumerate the claims he is asserting. Paragraphs in the amended complaint appear to combine factual allegations with legal claims, and Moon does not make clear which claims are based on state law and which are based on federal law. However, Defendants did not move to dismiss the complaint, and appear from the answer [16] and motion for summary judgment [31] to understand the claims against them and are able to mount a reasonable defense. Therefore, the Court will use the parties' briefs to resolve any ambiguity regarding the claims asserted.

As far as the Court can tell, based on both the complaint and the issues addressed by the parties in the motion for summary judgment, Moon asserts the following state law claims: assault and battery, [14] at ¶8 & 11; false imprisonment, [14] at ¶15; false arrest, [14] at ¶15; malicious prosecution, [14] at ¶15; conspiracy, [14] at ¶19; and negligent hiring, training and supervision of law enforcement officers, [14] at ¶26. Moon does not cite any federal law related to these claims, so they are presumably state law claims.[3] Moon clearly alleges federal claims under 42 U.S.C. § 1983, § 1985 and § 1986 based on violations of the Fourth and Fourteenth Amendments. [14] at ¶10, 18 & 24.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any

---

**2.** Smith's declaration [34-1] numbered the paragraphs incorrectly. This paragraph is the second paragraph marked "6," but is in fact the eighth paragraph in the declaration. Citations to Smith's declaration will reference the numerically correct paragraph number and not the label given in the declaration.

**3.** Moon also does not cite any state statutes in support of these claims, adding to the ambiguity of the amended complaint.

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir.1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must " 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue

for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir.1995) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).

### III. Claims Against Smith

Moon asserts the following state law claims against Smith: assault and battery, conspiracy, false imprisonment, false arrest and malicious prosecution. Moon also asserts federal claims under 42 U.S.C. § 1983, § 1985 and § 1986 based on violations of the Fourth and Fourteenth Amendments. Smith is sued in both his official and individual capacities.

#### A. Official-Capacity Claims

Levett is named as a Defendant in his official capacity, which is essentially a suit against the RCSO. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."). This means it is redundant for there to be any official capacity claims against Smith. Moon does not dispute this point, and therefore Smith is entitled to judgment on all official-capacity claims.

#### B. Qualified Immunity for § 1983 Claim

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff was deprived of a federal right by

a person acting under color of state law." *Sprauer v. Town of Jupiter*, 331 Fed.Appx. 650, 652 (11th Cir.2009) (internal punctuation omitted). Moon alleges that Smith, acting under color of state law, deprived him of his federal rights under the Fourth and Fourteenth Amendments. Smith asserts that he is protected from this claim by qualified immunity.

 "Qualified immunity protects [state actors] from § 1983 suits for civil damages arising from the discharge of their discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir.2008). In order to claim qualified immunity, a defendant must first establish that the challenged conduct was within the scope of his or her discretionary authority. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir.2005). Once the defendant satisfies that burden, "the burden then shifts to the plaintiffs to establish a constitutional violation." *Id.*

Moon's claims are based on Smith's decision to search and arrest Moon, and the level of force used during that arrest. These actions fall squarely within the discretionary authority of a law enforcement officer. Moon does not question this first prong of qualified immunity.

 Next, a plaintiff seeking to overcome a defendant's qualified immunity privilege must show that (1) the state actor violated plaintiff's constitutional or statutory rights, and (2) those rights were clearly established at the time the state actor violated them. *Douglas Asphalt Co.*, 541 F.3d at 1273.

Moon's claims in this regard are fairly straightforward: he argues that he had not used marijuana that day and had no marijuana on his person, meaning it would be impossible for Smith to detect the odor of marijuana or suspect that he might be trying to swallow marijuana. He avers that Smith fabricated the marijuana odor as a pretext to allow the RCSO to search, manhandle, and arrest him. Conversely, Smith maintains that he did detect the odor of marijuana, and that after searching the car, he "noticed Plaintiff was chewing on and trying to swallow something, which I believed was … marijuana." [34-1] at ¶8.

Thus, the Court is presented with a contested factual question: was marijuana or marijuana odor present that day, and did Smith have a reasonable basis for believing it was present? The record is unclear. The parties have offered diametrically opposed testimony. *Compare* [34] at 29:3-13; 33:17-34:14 (denying using or possessing marijuana that day) *with* [31-2] at 5 & 8 ("I also noticed the smell of raw marijuana…. Plaintiff was chewing on and trying to swallow something, which I believed was the marijuana."). No drugs were recovered from Moon, Jennings or the vehicle they traveled in, nor were any drug tests performed. On the one hand, Smith's testimony is bolstered by Duren's observations during the traffic stop that she too detected the odor of marijuana. On the other hand, the dash cam video shows Moon interacting with RCSO deputies for nearly nine minutes before Smith asserted that Moon tried to swallow something, and at no point does he appear to place anything in his mouth. A reasonable jury could find for either party on this factual issue, and thus the Court cannot resolve it on a motion for summary judgment.

 This factual question precludes judgment on qualified immunity. Moon claims that Smith used excessive force by placing his hands on Moon's throat and pushing Moon by the throat onto the patrol car. In cases of excessive force, the Court must consider the perspective of a reasonable officer on the scene at the time the events unfolded. *Garczynski v. Brad-*

*shaw,* 573 F.3d 1158, 1166 (11th Cir.2009). This is an objective standard that "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also J.B. ex rel. Brown v. Amerson,* 519 Fed.Appx. 613, 619 (11th Cir. 2013) ("*Graham* dictates unambiguously that the force used … must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.") *Lee v. Ferraro,* 284 F.3d 1188, 1198 (11th Cir.2002). Here, given the length of time that Moon spent talking with RCSO deputies on the hood of the patrol car, the Court cannot say as a matter of law that Smith's sudden grab of Moon's throat was reasonable, especially as Moon had given no indication that he would resist or flee from the multiple officers at the scene.

To counter this conclusion, Smith points to *German v. Sosa,* 399 Fed.Appx. 554, 557 (11th Cir.2010), in which the Eleventh Circuit held that "[i]t is constitutional for officers recognizing an attempt to swallow and destroy what appears to be narcotics to hold the suspect's throat and attempt to pry open the suspect's mouth by placing pressure against his jaw and nose." However, in *German,* the court held that "[Plaintiff] has provided no evidence that [Defendant]'s belief that [Plaintiff] was attempting to swallow cannabis was unreasonable." *Id.* at 557. Smith does not claim to have seen any actual marijuana, and Moon was sitting on the hood of the patrol car, speaking with officers for approximately nine minutes without appearing to put anything in his mouth. Accordingly, there is sufficient evidence that a jury could find that Smith's belief—that Moon may have been attempting to swallow narcotics—was unreasonable.

Thus, there remain material questions of fact regarding whether Smith violated Moon's clearly established constitutional rights. As such, Smith cannot prevail on his motion for summary judgment, either as it pertains to qualified immunity or on the merits of the § 1983 claim. Instead, a jury must adjudicate these facts.

### C. Section 1985 and 1986 Claims

 Moon also makes a fleeting reference to § 1985,[4] which is a claim that Smith conspired with others to deprive Moon of his rights under the Fourth and Fourteenth Amendments. Public officials cannot claim qualified immunity from a claim under § 1985. *Burrell v. Bd. of Trustees of Ga. Military Coll.,* 970 F.2d 785, 793 (11th Cir.1992).

 However, Moon's § 1985 claim is plainly invalid. A conspiracy claim may not be asserted against a single governmental entity, or its employees. *Dickerson v. Alachua Cty. Com'n,* 200 F.3d 761, 767 (11th Cir.2000) (holding that a governmental entity's employees, acting as agents of that entity, "are deemed incapable of conspiring among themselves" or with the entity under § 1985(3)). Moon's factual allegations are cabined to Smith, Duren, and the RCSO. As all are part of a single governmental entity—the RCSO—the § 1985 claim is invalid. Similarly, any claim Moon is attempting to assert under § 1986 must also fail, because it is wholly dependent on

---

4. Presumably, this is an attempt to plead a claim under § 1985(3), as the other parts of that law are plainly inapplicable. *See* 42 U.S.C. § 1985(1) (preventing an officer from performing federal duties) & § 1985(2) (obstructing federal court proceedings).

**1378**

his § 1985 claim. *See Morast v. Lance*, 807 F.2d 926, 930 (11th Cir.1987) ("A § 1986 action is predicated on a successful conspiracy action under § 1985."). Accordingly, Smith is entitled to judgment on the § 1985 and § 1986 claims.

### D. Qualified Immunity for State Claims

■ Moon asserts claims of assault and battery, conspiracy, false imprisonment, false arrest and malicious prosecution. Smith avers that he is entitled to protection based on state-law qualified immunity.

■ The Georgia doctrine of qualified immunity offers limited protection to public officers and employees sued in their individual capacities. *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 344 (2001). The doctrine "protects individual public agents from personal liability for discretionary acts taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Id.* (citation and quotations omitted.) The doctrine also protects a public employee for the nonperformance of a discretionary act where the evidence shows that the act was done without actual malice or intent to cause injury in the performance of the employee's official functions. *Wendelken v. JENK LLC*, 291 Ga.App. 30, 661 S.E.2d 152, 154 (2008).

■ "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." *Tittle v. Corso*, 256 Ga.App. 859, 862, 569 S.E.2d 873, 876 (2002). It does not, however, include "implied malice," that is, "the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007).

Moon makes accusations that Smith fabricated the smell of marijuana as a pretext for an attack on Moon, and that he conspired with Durren and other RCSO deputies to achieve this. *See* [14] at ¶11,

18–19. However, he has produced no evidence that would indicate a deliberate intention to commit a wrongful or illegal act. As discussed previously, when taking account of the existing evidence, Smith may have had an unreasonable belief that Moon was attempting to swallow narcotics. This unreasonable belief could be negligent, or even reckless, but there is simply no evidence that it was an intentional pretext for illegal action. Accordingly, Moon has not made any showing of willfulness or actual malice, and Smith is thus entitled to the protection of qualified immunity from all state-law claims.

### IV. Claims Against Levett

Levett is sued only in his official capacity as the Sheriff of Rockdale County. He asserts that he is immune from suit pursuant to the Eleventh Amendment. Moon counters that Levett waived any Eleventh Amendment protection by removing this case to federal court.

### A. RCSO Is an Arm of the State

■ "The Eleventh Amendment to the Constitution bars federal courts from entertaining suits against states." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1302 (11th Cir.2005). For Eleventh Amendment purposes, it is thus important to determine "whether the entity sued is an arm of the state" or of the county. *Id.* at 1303. This determination must go beyond mere labels, and must take account of whether the Defendant RCSO "represents the State or the county when [it] acts in a law enforcement capacity." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785–86, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

To determine whether the defendant, while engaged in the relevant function, acts as an arm of the state, we conduct a four-factor inquiry, taking into account

(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity. When the defendant entity is a county sheriff, our determination is dependent on the law of the state in which the sheriff operates.

*Abusaid*, 405 F.3d at 1303 (citation omitted).

"Georgia's Constitution designates the sheriff as a 'county officer' but, in the same paragraph, grants the state legislature the exclusive authority to establish and control a sheriff's powers, duties, qualifications, and minimum salary." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1332 (11th Cir.2003) (citing Ga. Const. art. IX, § 1, ¶ 3(a)-(b)). The state controls all qualifications and training for sheriffs, *id.* at 1335, and sets the minimum salary amounts that the counties must pay, *id.* at 1339–40. The state also extends sovereign immunity for state law claims to the Sheriff's office. *Id* at 1340–41. By contrast, "counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function." *Id.* at 1336. All of these factors indicate that, in most law enforcement functions, Georgia sheriffs are arms of the state, not of the county. *Accord Manders v. Lee*, 338 F.3d 1304, 1328–29 (11th Cir.2003) (examining Georgia law to show that most of the four *McMillan* factors indicate that sheriffs operate as arms of the state).

The Eleventh Circuit in *Grech* and *Manders* took this analysis further, discussing why the particular law enforcement functions—in those cases "the sheriff's entry and validation of warrants on the CJIS system" and the sheriff's operation of a county jail, respectively—were controlled by the state. Grech, 335 F.3d at 1344; *Manders*, 338 F.3d at 1328. Here, the particular law enforcement functions in ques-

tion are: (1) hiring deputies to enforce criminal laws, (2) providing policies, training and supervision for such officers, and (3) enforcing traffic and drug laws.

As previously noted, the state sets the qualifications for hiring, training, and supervising sheriffs. *Grech*, 335 F.3d at 1335. While Moon was eventually charged only with a county offense—disorderly conduct under Rockdale Cty. Ordinance § 66-1—at the time of the events in question Smith and the other RCSO deputies were enforcing the traffic laws and drug laws promulgated by the state, not the county. *See* O.C.G.A. § 40-8-23(d) (regulating vehicle tag lights); O.C.G.A. § 16-13-30(j) (possession of marijuana); O.C.G.A. § 40-6-391 (driving under the influence of drugs); *see also* O.C.G.A. § 16-10-24 (obstruction of law enforcement officers). That Moon could also be prosecuted for violating county ordinances does not change the fact that the RCSO was enforcing state laws at the time of the events in question. Thus, the Court is satisfied that this case is indistinguishable from previous Eleventh Circuit cases in which a Georgia sheriff was found to be an arm of the state for Eleventh Amendment purposes.

## B. Waiver of Eleventh Amendment Immunity

While the RCSO may be eligible to claim Eleventh Amendment immunity, that protection can be waived. In *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623–24, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), the Supreme Court held that a state waives its Eleventh Amendment immunity by removing a case to federal court. However, that holding was restricted to "state-law claims ... [where] the State has explicitly waived immunity from state-court proceedings." *Id.* at 617, 122 S.Ct. 1640. Most circuit courts, including the Eleventh Circuit, have ap-

plied this holding to both federal and state law claims—that is, "the source of a plaintiff's claim against a state (state law or federal law) is irrelevant to whether a state waives its immunity against that claim by removing to federal court." *Stroud v. McIntosh*, 722 F.3d 1294, 1300 (11th Cir.2013).

 Yet this is not the end of the inquiry. Sovereign immunity under the Eleventh Amendment encompasses both immunity from the jurisdiction of federal courts *and* immunity from liability. *Id.* at 1301 ("Sovereign immunity ... encompasses more than this narrow immunity from federal jurisdiction."). While removal to federal court waives the "immunity-based objection to a federal forum," the state may nonetheless "retain[ ] its immunity from liability." *Id.* The relevant question is thus whether the RCSO would be immune from Moon's claims if they were brought in state court.

### i. State Claims

 Levett asserts that, in his official capacity as Sheriff, he is protected from any state law claims by state sovereign immunity. In Georgia, sheriffs are state actors who can invoke sovereign immunity. *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 346 (2001). "[T]he sovereign immunity of the state and its departments and agencies can be waived only by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." *Wellborn v. DeKalb Cty. Sch. Dist.*, 227 Ga.App. 377, 489 S.E.2d 345, 379 (1997). Georgia's primary waiver of sovereign immunity comes from the Georgia Tort Claims Act, O.C.G.A. § 50-21-20 *et seq.*, but that act specifically does not apply to claims of "assault, battery, false arrest, [or] malicious prosecution." O.C.G.A. § 50-21-24. Moon has pointed to no other waiver of sovereign immunity that could cover the RCSO for his claims, and thus the RCSO would be immune in state court from these claims.

### ii. Federal Claims

In *Lapides*, the Supreme Court limited its discussion to state law claims because, despite the presence of a § 1983 claim in the complaint, the case "[did] not present a valid federal claim against a State." *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640. Thus, if Moon's federal claims against the RCSO are plainly invalid, then assertion of those invalid claims will not impact whether the state has properly preserved its sovereign immunity from liability.

 Moon's federal law claims against the RCSO are plainly invalid. Moon seeks monetary damages on his § 1983 claim, but "a state is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides*, 535 U.S. at 617, 122 S.Ct. 1640 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). And, for the reasons detailed in Part III.C, *supra*, Moon's single fleeting reference to § 1985 and § 1986 are plainly inapplicable.

Accordingly, the RCSO could not be liable in state court for Moon's federal-law claims. Following the Supreme Court's approach in *Lapides*, the RCSO would maintain its Eleventh Amendment protection from any possible liability.

### C. Eleventh Amendment Conclusion

The RCSO acted as an arm of the state during the events in question, and thus can invoke the protections of the Eleventh Amendment. While any immunity-based objections to a federal forum were waived when Defendants—including the RCSO—removed this case to federal court, the RCSO nonetheless maintains sovereign immunity from any liability for both the federal and state law claims asserted by Moon. Accordingly, Sheriff Levett, in his

official capacity, is entitled to judgment on all claims.

## V. Claims Against Rockdale County

■■■ Rockdale County moved for summary judgment on all claims, asserting that it plays no part in the actions of the RCSO.[5] In his opposition to the summary judgment motion, Moon notes that he "appreciates that Defendants admit that Defendant Sheriff Levett, not Rockdale County, is responsible for the actions of the deputies in this case." [36] at 8. Moon makes no other mention of Rockdale County as a Defendant. As such, Moon's claims against Rockdale County are deemed abandoned. *See Hudson v. Norfolk S. Ry. Co.*, 209 F.Supp.2d 1301, 1324 (N.D.Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995))). Accordingly, Rockdale County is entitled to judgment on all claims.[6]

## VI. Conclusion

Accordingly, Defendants' motion for summary judgment [31] is denied as to Moon's § 1983 claim against Smith in his individual capacity, and granted as to all other claims.

IT IS SO ORDERED this 27th day of May, 2016.

---

5. "In Georgia, the sheriff's office is a separate, constitutionally created entity that is independent from the county." *Bush v. Reeves*, 2005 WL 3542880, at *2 (N.D.Ga. Dec. 23, 2005) (citing Ga. Const. art. IX, § 2, ¶1(c)(1)). Therefore, Rockdale County argues that it cannot be held liable for the actions of a sheriff's office over which it has no control. *See Grech*, 335 F.3d at 1333.

6. Rockdale County also asserted that it was protected from any state law claims by sovereign immunity. A claim of sovereign immunity raises questions concerning the Court's jurisdiction. *See Dep't of Transp. v. Dupree*, 256 Ga.App. 668, 570 S.E.2d 1, 5 (2002) ("Sovereign immunity of a state agency is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case."). However, because Moon's claims under both state and federal law against Rockdale County are deemed abandoned, the Court need not consider the question of sovereign immunity.